**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Criminal Case:  18-Cr-101 (TSC)** |
| **v.** | : | |
| | : | |
| | : | **Sentencing: October 15, 2018** |
| **NICHOLAS BUKOSKI** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Defendant Nicholas Bukoski has pled guilty to transmitting in interstate commerce, a communication, and the communication contained a threat to injure the person of another, namely, to injure participants in the "March For Our Lives" demonstration in support of stricter gun laws, with knowledge that the communication would be viewed as a threat, in violation of 18 U.S.C. § 875(c).  This case arises out of a series of threating communications made by the defendant on March 24, 2018, directed at the demonstration and supporters of the event.

For the reasons stated herein and for any additional reasons offered at the sentencing hearing, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment of 16 months.

### BACKGROUND

On March 24, 2018, three threating messages were communicated from the defendant in Maryland to locations in the District of Columbia. The first Instagram message was to the office of United States Senator Bernard Sanders at 12:06 pm and stated "**Senator, I would watch your back as you're out today… You wouldn't want to be caught off guard when I use my second amendment protected firearm to rid the world of you, you stupid, crazy old fool…**"

Two minutes later an Instagram message was sent to the office of United States Senator Kamala Harris and stated **"You fucking bitch, I am going to make sure you and your radical lefty friends never get back in power you will never run for president, because you won't make it to see that day."** The third threat was via telephone to the Metropolitan Police Department ("MPD") text tip line and stated: **"forms…I am intending to send the message that gun control, bomb control, or any other kind of weapons control will not stop attacks, it is an issue of the heart. My heart is messed up and evil, and part of me wants to see people suffer, goddammit. Anyway, good luck and Godspeed finding my presents. This will be my only message."** [1]

MPD considered the threat to the tip line as directed against the "March for Our Lives" event that was taking place in Washington, D.C. and attended by thousands speaking out against school shootings and gun violence. Investigators believed the word "presents" referred to explosive devices. MPD obtained the subscriber information from the provider and determined that the text message came from NICHOLAS EDWARD BUKOSKI, with his date of birth, home address in Anne Arundel County, Maryland and an email address associated with the number.

Anne Arundel County Police responded to the home and met the defendant and his father who allowed entry and spoke to the officers. The defendant was sitting at the kitchen table with a black and red colored cell phone near his right hand. He was asked if he contacted anyone in Washington, DC. He turned to his father and asked him to call his lawyer. The defendant was visibly "nervous" and kept looking at this watch. He then informed the officers that he studies

---

[1] The defendant also sent an Instagram message to former Congresswoman Gabrielle Giffords at 12:11 pm, which stated, **"Mam, I would kindly ask you to stop your radical, left wing, gun-grabbing ways, for your own safety…. It would be a shame to see you get hurt."**

"police tactics," and asked if the "**bomb squad was coming."**  The defendant then stated "they don't need to come here."  When asked what he meant by that statement, he refused to answer. At that time, he was placed in handcuffs and taken to the Anne Arundel Medical Center for emergency evaluation.  On the way to the medical facility, the defendant stated that he was not crazy and if he was, he would have already done something.  The defendant's father gave consent to search the home, and the laptop and cell phone owned by him and used by his son. The father indicated that the son was home with him and on the laptop and cell phone most of the day.  He also gave the officers two composition journals written by his son.

The defendant made several statements at the mental treatment facility.  He admitted to sending the threats and acknowledged that he crossed the line from free speech to hate speech and violence. Specifically, he sent threatening messages to Senator Bernie Sanders, Senator Kamala Harris, "Senator Gabbie Giffords," Planned Parenthood, and MPD.   He was watching the news and social media which made him want to send the threats.  He stated he was frustrated with liberals and very supportive of the current president.  This was the first time he ever made such threats, which he considered "watch your back threats." He told the officer that he wanted to "get arrested" because he's "committed other crimes and got away with them." He told the officer his telephone number, which is the same number the sent the message to the MPD tip line.  He admitted the threats to the Senators were from his Instagram account.  He stated his anger got the best of him.  He observed several videos on Facebook about the *March* in DC that angered him.  In fact, Senators Sanders and Harris had posted messages on Instagram in support of the *March*. The defendant does not have access to a firearm.  He stated, his "parents won't purchase a firearm based on his history and the strict gun laws in Maryland" he "probably won't be able to get one."  The defendant stated, "**I don't want to kill people unless I absolutely need**

to." When asked about the "presents," referenced in the text message, the defendant stated there were none and that he was "**not as smart as the Boston Bombers or the guy in Austin.**"

A search warrant was executed for all the items provided by the defendant's father. On March 24, 2018, the defendant looked up contacting Senator Sanders and the MPD tip line as well as a Wikipedia page entitled, "threatening government officials of the United States" and a blog entitled "Assassination Threats Against the President: What lands you in prison?" One of the handwritten notes inside the black composition journal contained the following message:

> **"What did I do? Saturday March 24. This morning I sent threatening Instagram Dhis to:"**

The defendant also wrote stories about serial killers and sexual fantasies in his journals. He visits websites about Charles Manson, gruesome murders, serial killers and murders of police officers.

On April 9, 2018, the defendant was arrested in Anne Arundel County for armed robbery of a 7-11 with a knife that occurred on January 11, 2018. At the time of the arrest, following Miranda warnings, the defendant confessed to the armed robbery, several arsons and the threats in this case. The armed robbery and arson charges are currently pending in Maryland.

## ARGUMENT

"As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining the defendant's sentence. *Gall v. United States,* 128 S.Ct. 586, 596 (2007). The government's recommendation of 16 months is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S.Ct. 558,

564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). The Supreme Court "accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve §3553(a)'s objectives.'" *Kimbrough*, 128 S.Ct. at 562-63 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007)).

## GUIDELINES CALCULATIONS

The Probation Office initially determined that Nicholas Bukoski's guideline offense level was 12. His base offense level is 12. U.S.S.G. § 2A6.1. Because the offense involved more than two threats, his base offense level is increased by two levels pursuant to U.S.S.G. § 2A6.1(b)(2). The resulting offense level is 14. The government agrees that the defendant has accepted responsibility for the offenses of conviction, decreasing the offense level by two pursuant to U.S.S.G. § 3E1.1(a).

The Probation Office has determined that the defendant has a criminal history score of zero, establishing a criminal history category of I. See Presentence Investigation Report (herein after PSR) page 8. The defendant objects to the application of the Specific Offense Characteristic U.S.S.G. § 2A6.1(b)(2) alleging that the threats the defendant made to the U.S. Senators do not constitute relevant conduct under § 1B1.3 because they involve different victims and therefore do not group under § 3D1.2(d). In the final PSR, the Probation Office agreed with the defense allegations. The government respectfully disagrees with the PSR's final calculations and the defense allegations. The threats directed to the Marchers and the threats directed to the

Senators was part of the same course of conduct or common scheme and therefore is clearly

relevant conduct.  Traditionally, grouping would only be relevant if there are multiple counts of

conviction. *United States v. De La Torre*, 327 F. 3d. 605, 609 (7th Cir. 2003).  In this case, the

defendant entered a plea to one count of transmitting threats in interstate commerce.   However,

§2A6.1(b)(2) still applies because the offense involved more than two threats.   Application note

1 states that the court shall consider both conduct that occurred prior to the offense and conduct

that occurred during the offense; however, conduct that occurred prior to the offense must be

substantially and directly connected to the offense, under the facts of the case taken as a whole.

The news media widely reported of the citizens gathering for the *March* in D.C. Senators

Sanders and Harris posted Instagram messages in support of the *March*.  The defendant

deliberated and conducted on line research to determine how far he could go with the threats.  He

crafted specific language for each threat.  It was the defendant's admitted anger at the Marchers

and their liberal supporters that emboldened him to act.  See also *United States v. Parker*, 551

F.3d 1167 (10th Cir. 2008). The defendant was convicted of falsely conveying information about

an attempt to blow up a building, in violation of 18 U.S.C. § 844(e). The court of appeals

affirmed that the defendant qualified for a 2-level enhancement for an offense involving two or

more threats, stating "[i]t is generally understood, however, that threats are counted under

§2A6.1(b)(2) based on the number of threatening communications; and *United States v. Frazer*,

391 F.3d 866 (7th Cir. 2004). The defendant pled guilty to using a telephone to make threatening

communications in violation of 18 U.S.C. § 844(e). The defendant placed three telephone calls to

two schools announcing that bombs were planted in the schools. The court noted that existing

authority associates the number of threats with the number of communications made and

concluded there were three bomb threats. The court confirmed that the defendant was correctly subjected to associated two-level increase in his base offense level.

The facts in the instant case taken as a whole indicate that the defendant made more than two threats and the 2- level enhancement should apply.

## SENTENCING FACTORS

When weighing the 18 U.S.C. § 3553 (a) factors as part of its calculus of an appropriate sentence, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives – that is, that the sentence should: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed education or vocational training and medical care. *See* 18 U.S.C. § 3553 (a)(1) and (2).   In addition, the sentence should reflect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### A.       The Nature and Circumstances of the Offense

The defendant not only threatened innocent young people at a peaceful demonstration, but he threatened two United States Senators who voiced their opinions in support of demonstrators.  His inflammatory language was intentional and designed to provoke a response from law enforcement.  Language that "part of me wants to see people suffer" and "good luck …finding my presents" was designed so that law enforcement would believe it was in fact a real imminent threat. This serious crime had a real impact on the multiple law enforcement agencies and officers that were charged with keeping the city and its visitors safe.  The defendant created a very real danger, by diverting precious resources away from true law enforcement emergencies. Threating innocent people demands incarceration.

7

**B.**     **History and Character of the Offender[2]**

The defendant is 19 years old and has engaged in disturbing and escalating violent conduct.    Based on his character, it is unknown whether he would have continued with this type of criminal behavior absent law enforcement intervention or whether he would have engaged in more violent behavior. The defendant is obsessed with crime and violence.  He engages in violent destructive behavior and has had no consequences to date.  If history is any indication, this will not be the last court to sentence this defendant.  Incarceration is the only option for this type of offender.

**C.**     **The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public**

Punishment alone justifies incarceration; it is also important to deter the defendant and others from such unlawful behavior.  Deterrence and promoting respect for the law should be a principal goal of the Court's sentence.  The Court's sentence can have a real deterrent effect on others contemplating similar conduct.   Moreover, in a post-9/11 world, where terrorist attacks at home and abroad have become distressingly common, it is widely understood that law enforcement must take seriously all claims of violence towards crowds of civilians. The potential harm from such an attack is too great to risk inaction.   The defendant's conduct not only demonstrates a lack of respect for the law, but a lack of respect for his fellow human beings.  A sentence of 16 months will promote respect for the law and serve as a warning that this type of conduct will not be tolerated.

**D.**     **The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

---

[2] See – Government's Supplemental Memorandum filed under seal.

In assessing punishment, the Court must consider the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). When such comparison is made, it is clear that a 16-month sentence is more than appropriate and justified when compared with the sentences imposed in cases involving similar conduct.

Although the facts were quite different in the case listed below, there are similarities that warrant mention. In *United States v. Pitt,* No. 14-1071 (8th Cir. Nov. 17, 2014), the court sentenced a defendant following a plea to 18 U.S.C. § 875 (c) to 30 months imprisonment. The defendant in *Pitt* had the same total offense level (12), advisory guidelines range of 10-16 months, and criminal history category I as defendant Bukoski. See also; *United States v. Freeman,* 176 F.3d 575 (1st Cir. 1999), the defendant was sentenced on a plea to 18 U.S.C. § 875 (c) to 30 months imprisonment; *United States v. Darby,* 37 F. 3d 1059 (4th Cir. 1994), the defendant was sentenced to 40 months following a jury trial conviction of a violation of 18 U.S.C. § 875 (c); *United States v. Voneida*, No. 08-4032 (3d Cir. July 5, 2009), the defendant was sentenced to 19 months imprisonment following a jury trial conviction of a violation of 18 U.S.C. § 875 (c); and *United States v. Patrick Syring,* Cr. No. 07-204(CKK), the court sentenced the defendant following a plea to 18 U.S.C. § 875(c) to 12 months and one day, concurrent to a 12 month sentence for violation of federally protected activities.

## CONCLUSION

In making its recommendation for a sentence of 16 months incarceration, the government is cognizant of defendant's personal characteristics as reflected in the presentence report, his background and recent challenges. The government is also aware that there are too many legitimate threats facing our society.   It is unacceptable for society and law enforcement to be

burdened by threats of violence.  The plea offer made in this case, as well as the sentencing

recommendation, already takes into account the defendant's circumstances, history and the

severity of his criminal conduct in this case.

WHEREFORE, the United States respectfully requests that the Court sentence the

defendant to a period of incarceration, consistent with this sentencing memorandum.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:      _____/s/_____
Brenda J. Johnson
Assistant United States Attorney
National Security Section
D.C. Bar No. 370737
555 4th Street, NW
Washington, D.C. 20530
(202) 252-7801

October 9, 2018