UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case. No. 18-cr-101 (TSC) |
| NICHOLAS BUKOSKI, | ) ) ) | |
| Defendant. | ) ) | |

## REDACTED SENTENCING MEMORANDUM

Nicholas Bukoski, through counsel, submits this Sentencing Memorandum for the Court's consideration in determining an appropriate sentence in this case.[1]  Mr. Bukoski will appear before the Court for sentencing on October 15, 2018.  For the reasons that follow, Mr. Bukoski respectfully requests a sentence of probation with a period of home confinement.

### Background

To those who know him, it is difficult to reconcile the soft-spoken, respectful, youthful demeanor of Nicholas Bukoski with the anger evident in the threats that bring him in front of this Court today.   In fact, it has been and remains hard for Nicholas himself to reconcile his conflicting emotions, and to navigate the minefield of his teenage years—treacherous as they are for everyone—with the burden of significant mental illness and within the confines of a devoutly religious and cloistered home.  Nicholas has made a lot of poor decisions, and needs ongoing supervision and mental health treatment, but he is not the monster the government makes him out

---

[1]   Sensitive and personal mental health information has been redacted.   Mr. Bukoski will move for leave to file an unredacted version under seal.  See Fed. R. Crim. P. 49.1(d).

1

to be.  He is a boy, first and foremost, who has faced the challenges, confusions, and humiliations of burgeoning adulthood without the mental health and coping skills upon which most of us rely every day.

Nicholas comes from an immensely loving and devoted family.  His parents, Steve and Cheryl, and his sister, Emma, have stayed by his side throughout this ordeal, and they plan to stay there until he is back on track.  They have visited him weekly throughout his detention at the Jennifer Road Detention Center in Annapolis, and have spoken with him by phone almost every day.  They plan to support him through all court-imposed sanctions in this case and the pending Maryland cases and hope to help him get the proper and effective treatment for his mental health issues so that he can lead a productive, relatively "normal" life.  PSR ¶ 56.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████

For all the love and support that Nicholas received in his home life, he was also denied myriad liberties, outlets and coming-of-age experiences enjoyed by a typical American teenager. His social interactions were limited to a small homeschooling network and church community, and even those were sporadic.  His therapy was contained within this same network, and thus failed to provide much of an outlet.  His main companion was his sister—and their bond is

strong—but due to a lack of meaningful social exposure and development, his focus turned inward. He watched sports sometimes, but didn't play them; he loved the piano and channeled energy into that, until his depression took over.   Importantly, he discovered the computer, and the unilateral, isolated escape that it provided him consumed more and more of his focus.   Instead of going to classes, and sports games and parties, Nicholas was at home watching the news, surfing the internet, and feeling useless and frustrated.



So he turned further inward, letting his frustrations simmer and seeking solace in the freedom and isolation of the internet.   And there his anger grew.

Nicholas alone is responsible for his actions—his anger and his threats and his ultimate criminal actions—but he was not equipped with the coping and social skills of an average teenager. He had not learned to interact with society in a healthier way; instead, he was taught to stifle his feelings and frustrations.   Depression, along with shame- and internet-fueled isolation and anger led to the behavior for which Nicholas is to be sentenced by this Court.

Nicholas's behavior and poor decisions have forever altered the course of his life, but his

3

life is by no means over. He has paid a hefty price for his actions, and he will continue to do so, but he also asks that the Court consider his sentence as an opportunity for continued growth and ongoing mental health treatment. No one—not Nicholas, his family, his doctors, or undersigned counsel—thinks his need for mental health treatment is over or unimportant. Indeed, it is of utmost import, and that is why a sentence of probation is sufficient but not greater than necessary to reflect the seriousness of the offense, while allowing him to pursue the more intensive mental health treatment that he needs. He has a team standing by to receive him when he is released to support him on his path to wellness, atonement, and healthier integration into society.

## **Sentencing Law**

In sentencing, the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).

In determining such a sentence, the sentencing court must consider the United States Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. *Id*. § 3553(a)(1). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of

4

guidance as a youth.  *Id.* § 3661.

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is *not* an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a) (emphasis added).  With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]."  *Id*. § 3553(a) (emphasis added).

## Argument

Nicholas Bukoski is a teenaged, first-time offender whose conduct is attributable to youth and mental illness.  In less than twenty minutes, on one day, he tapped a few times and sent three instant, electronic messages—one text and two Instagram direct messages.  He now has a federal felony conviction and is subject to all of the collateral consequences that accompany it.  And this conviction increases his sentencing exposure in two cases pending in Maryland that are related to the instant case:  all conduct is the result of a relatively recent, ongoing mental health crisis.  It is defense counsel's understanding that, in Maryland, Nicholas faces, at least, two to seven years of imprisonment on robbery charges and six months to four years of imprisonment on arson charges.  For whatever reason, the government would not consider a global plea agreement to resolve all cases together.  Thus, for conduct that is all related and took place, in large part, over just a few months in the beginning of this year, Nicholas faces—as a teenaged, first-time offender suffering from mental illness—two sovereigns with two separate sentencing schemes and two separate prison systems.

Federal law and the Sentencing Guidelines permit a sentence of probation, home detention, and community service in this case. *See* PSR ¶¶ 99-101 (citing applicable authority). Such a sentence, with the special condition that he participate in ongoing mental health treatment, is sufficient but not greater than necessary to meet the purposes of sentencing in this case, and it is in the best interest of the community. By contrast, any period of federal imprisonment—on top of that which Nicholas receives in Maryland—will serve only to exacerbate his mental health issues, delay necessary mental health treatment that he would otherwise be getting in Maryland custody or at home with his parents' support, and expose him to hardened federal criminals which, studies show, increases the likelihood of recidivism for youthful offenders.

## I.    The Sentencing Guidelines Support a Sentence of Probation, Home Detention, and Community Service.

The presentence report calculates the total offense level to be 10, resulting in a Guidelines range of 6 to 12 months of imprisonment, in Zone B of the Sentencing Table. PSR ¶ 90a. Though the government argues that a two-level enhancement applies under U.S.S.G. § 2A6.1(b)(2), such an enhancement does not apply because Nicholas made only one threat to the March for Our Lives participants. The threats that Nicholas made to Senators do not count because, under the Guidelines, those threats are not relevant conduct as defined in § 1B1.3. Under the Guidelines, the threats to the Senators are not relevant conduct because they involve different victims; even though the threats are part of the same course of conduct, the counts alleged in the indictment do not group under § 3D1.2(d). *See* U.S.S.G. § 1B1.3(a)(2); § 2A6.1 note 3. Thus, the threats to the Senators cannot be considered a "specific offense characteristic"

6

of the offense to which Mr. Bukoski pled guilty (Count 5 of the Indictment).[2]

The presentence report suggests that "the Court might entertain an upward departure" because "the guideline computation does not take the additional two threats into consideration." PSR ¶ 110a.  However, the report also suggests that "the Court might consider a [downward] departure based upon Mental and Emotional Conditions as the defendant has since the instant offense occurred, established a mental health medication and treatment regimen."  *Id*. ¶ 110. Even if the Court agrees with the government about the two-level enhancement and determines that the applicable Guidelines range is, as the government argues, 10 to 16 months and in Zone C of the Sentencing Table, mental and emotional conditions (and all of the other mitigating factors and considerations presented herein) would nonetheless support a sentence below that range of a term of probation and home detention, rather than imprisonment.

## II.     The Offense Constitutes One Instance of Little or No Deliberation That Was Part of An Ongoing Mental Health Crisis.

Nicholas made the threats in this case over the span of less than twenty minutes on one afternoon.   He "deliberated" for, at most, only approximately 40 minutes beforehand. Statement of Offense at 1, 3, ECF No. 19.   The threats were communicated instantly, with mere taps on a touch-screen phone.   Nicholas did not sit down, handwrite threatening messages, address an envelope, place threatening messages into the envelope, seal the envelope, purchase

---

[2]     By contrast, because subsections (1) through (5) of § 2A6.1(b) do not apply, and the "offense involved a single instance evidencing little or no deliberation," subsection (b)(6) arguably applies instead.   Applying subsection (b)(6) would decrease the offense level by four, resulting in a total offense level of 6 and a Guidelines rage of 0 to 6 months, in Zone A of the Sentencing Table.   The defense does not seek this offense-level calculation; rather, the defense highlights subsection (b)(6) to show that the Guidelines recognize "a single instance evidencing little or no deliberation" as a mitigating factor that the Court can, and should, consider under 18 U.S.C. § 3553(a) in imposing a sentence, as discussed below.

7

postage for the envelope, and take the envelope to a mailbox.  He did not call and convey any threat to any live person on the other end of the phone.  Instead, in a few minutes with a few taps, the damage was done and irreversible.

And Nicholas was suffering from mental illness that had not yet been properly treated. Indeed, it was not until immediately following the threats in this case that he was prescribed medication that seemed to be effective.  *See* PSR ¶¶ 67, 69.  Unfortunately, by then, it was too late to prevent the threats in this case.  But, it is not too late for Nicholas to continue the recovery and rehabilitation that he began after March 24, 2018, and has been able to continue while in custody in Maryland.

## III. Nicholas's Age Reflects Diminished Culpability and Greater Prospects for Reform.

The Supreme Court has recognized developments in psychology and brain science showing that juveniles (1) "have a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivility, and heedless risk-taking"; (2) "are more vulnerable to negative influences and outside pressures," "have limited control over their own environment"; and (3) possess character traits that are "less fixed" than those of an adult.  *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quotation marks and citations omitted).  As a result, the Court has concluded that juveniles "have diminished culpability and greater prospects for reform."  *Id*.

"Contrary to conventional belief," Nicholas's youth did not end abruptly on his 18th birthday.  Council of State Governments Justice Center, *Reducing Recidivism & Improving Other Outcomes for Young Adults in the Juvenile & Adult Criminal Justice Systems* (hereinafter, "*Reducing Recidivism*") at 2 (Nov. 2015).  The "three significant gaps between juveniles and adults," enumerated above, that render juveniles less culpable and more capable of rehabilitation,

extend into young adulthood—the "transitional period that can range from age 18 to 24 and even beyond." *Id.* During young adulthood, "significant brain development is still occurring and decision-making abilities are not fully mature." *Id*. Indeed, "evidence from developmental neuroscience suggests that young adult offenders ages 18-24 are, in some ways, more similar to juveniles than adults." Phil Bulman, Justice Research:  Young Offenders:  What Happens & What Should Happen, at 2, Nat'l Inst. Justice, Off. Juv. Just. & Delinq. Prevention, U.S. DOJ (Feb. 2014). Research shows that "psychosocial capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood." James C. Howell, et al., *Bulletin 5:  Young Offenders & an Effective Response in the Juvenile & Adult Systems: What Happens, What Should Happen, & What We Need to Know*, Doc. No. 242935, at 17, Papers From the Study Group on Transitions From Juvenile Delinquency to Adult Crime, Nat'l Inst. Justice, Off. Juv. Just. & Delinq. Prevention, U.S. DOJ (July 2013) (unpublished) (citation omitted). Thus, "young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses," *id*. at 18, and it is "difficult to justify applying permanent or long-term sanctions to young offenders," including young adults in their early 20s, Carrie Mulford, Justice Research:  Explanations for Offending, at 2, Nat'l Inst. Justice, Off. Juv. Just. & Delinq. Prevention, U.S. DOJ (May 2014).

Nicholas is still only a teenager. His youth, particularly in combination with his mental health issues, render him less culpable for his actions than the average person and more capable of reform and rehabilitation.

**Conclusion**

For the foregoing reasons, as well as those set forth in any supplemental filings and at the sentencing hearing in this matter, a sentence of probation is sufficient but not greater than necessary to meet the purposes of sentencing. Any sentence of confinement that the Court imposes should be in the form of home confinement, rather than incarceration.

        Respectfully submitted,

        A. J. KRAMER
        FEDERAL PUBLIC DEFENDER

        _____/s/_____
        Celia Goetzl
        Assistant Federal Public Defender
        625 Indiana Ave., N.W., Suite 550
        Washington, D.C.   20004
        (202) 208-7500